**Dated: April 19, 2023**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Joe Arnold Jack and | ) | Case No. 22-10002-JDL |
| Rita Gayle Jacks, | ) | Ch.7 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| Samuel Crilly and | ) | |
| Kimberly Crilly, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. No. 22-1021-JDL |
| | ) | |
| Joe Arnold Jacks and, | ) | |
| Rita Gayle Jacks, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER DENYING DISCHARGE

Given the strictures of Bankruptcy Code § 727(a)(5),[1] in this acrimonious family

---

[1] Unless otherwise indicated, all statutory references and citations are to the United States Bankruptcy Code, Title 11 U.S.C. §§ 101-1532.

dispute adversary proceeding, the issue before the court is whether the Debtors have satisfactorily explained their expenditure of more than $446,000 in the two years preceding bankruptcy so as to entitle them to a discharge.[2]  The Court conducted the trial of the issue on March 22, 2023.  After carefully considering the evidence and arguments, in accordance with Fed. R. Bankr. P. 7052,[3] the below constitutes the Findings of Fact and Conclusions of Law in support of the Court's denial of a discharge to the Defendant/Debtors.  A separate judgment will be entered pursuant to Rule 9021.

### I. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), and 157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a).  This matter seeking a determination of an objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which this Court has authority to enter a final order. Furthermore, Plaintiffs and the Debtors/Defendants have consented to the jurisdiction of this Court and its ability to enter a final order pursuant to Rules 7008 and 7012.  Venue is proper pursuant to 28 U.S.C. § 1409(a).

---

[2] The Plaintiffs' Complaint and the Final Pretrial Order also asserted a claim to bar Defendants a discharge under § 727(a)(4)(A) for knowingly and fraudulently having made a false oath or account in their bankruptcy Schedules and Statement of Financial Affairs.  At trial, Plaintiffs' counsel announced that Plaintiffs were withdrawing any claim based upon § 727(a)(4)(A) and were proceeding solely on their § 727(a)(5) claim based upon the Defendants' failure to satisfactorily explain their pre-petition loss or expenditure of assets.

[3] All references to "Rule" or the "Rules" are to the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.").

2

## II. Facts

1. Defendant Rita Jacks ("Rita" or the "Jacks") is the mother of Plaintiff Samuel Crilly and mother-in-law of Plaintiff Kimberly Crilly. Rita has two other children, daughters Debra Nelson and Kristy Bodwell.

2. The Jacks, as Plaintiffs, and the Crillys, as Defendants, were engaged in protracted litigation in the District Court of Cleveland County, Oklahoma, Case No. CJ-2017-1075. A five-day jury trial conducted in August 2018, resulted in a judgment in favor of the Jacks entered by the Court on September 6, 2018, in the amount of $400,000 ($200,000 actual damages and $200,000 punitive damages), plus attorney fees to be determined. On December 13, 2018, the state District Court entered a separate judgment for attorney's fees in favor of the Jacks in the amount of $61,650.00, costs in the amount of $3,501.93, plus accruing interest.

3. The judgments were appealed by Crillys with the filing of a Petition in Error in the Oklahoma Supreme Court on October 9, 2018.

4. Following entry of the state court judgments, on September 12, 2018, the Crillys filed for bankruptcy relief under Chapter 11.[4] After the Court failed to confirm six proposed Chapter 11 Plans, and in the face of a Motion to Dismiss filed by the United States Trustee, on May 13, 2020, the Crillys agreed to voluntarily dismiss their bankruptcy. On the same date of the dismissal, the Crillys filed another Chapter 11 (subchapter V) bankruptcy.[5] On July 17, 2020, the Court entered an agreed order dismissing the second bankruptcy.

---

[4] Case No. 18-13849.

[5] Case No. 20-11637.

3

5. Following dismissal of the second bankruptcy, the Jacks by garnishment and execution received the following on the state court judgments:

a. $357,235.83 on or about July 16, 2020, (paid by a garnishment of Plaintiffs' Inherited IRA with Athene Annuity and Life Company, U.S.A.) which was paid to Defendants' attorney who, after deducting his fee, was instructed to transfer $275,222.67 to Rita's daughter Debra Nelson's savings account;

b. $20,933.63 on or about August 11, 2020 (paid by a garnishment on funds held in trust account of Plaintiffs' attorney);

c. $146,717.02 on December 7, 2020, (payment on the judgments by a payment from First American Title Insurance Co. which the Jacks directed to be made to Debra Nelson resulting from an Order for Special Execution and Order of Sale levied on 10 acres of non-exempt property owned by the Crillys); and

d. $4,025.00 in January 2021.

6. The total net amount received by the Jack's on the judgments which they had obtained against the Crillys was $446,897.00.[6]

7. On March 21, 2021, the Oklahoma Supreme Court affirmed the Judgment of the $400,000 in damages awarded the Jacks but reversed on the issue of attorney's fees. As a result, on remand, the District Court entered a judgment ordering the Jacks to reimburse the Crillys for the attorneys' fees in the amount of $70,678.92 which the Jacks had collected.

---

[6] This figure is consistent with the amounts paid set forth in numerical ¶ 5 above and which were among the Stipulated Facts contained in the Final Pretrial Order. On direct examination, Defendant Joe Jacks answered in the affirmative when asked by Crillys' counsel whether the amount which the Jacks had received in 2021-2022 was $446,897.00.

8. The Crillys then initiated attempts to collect the Judgment of $70,678.92 from the Jacks. On December 13, 2021, the District Court entered its order for the Jacks to appear on January 4, 2022, and answer concerning their property and assets (HOA). As a result, on January 3, 2022, the Jacks filed their Petition for Chapter 7 relief.

9. Rita Jacks testified that from the $275,222.67 wired to Rita Jack's daughter's savings account in July 2020, approximately $147,000 was used to pay off a note and mortgage on the Jacks' home in Moore, Oklahoma. She also testified that she paid off three bank loans and credit card bills, but did not provide a dollar amount for payment of same. No documentary proof or other supporting evidence was introduced to support Jacks' testimony regarding any of these payments.

10. Both Rita Jacks and her husband testified that from the money that was deposited in her daughter's savings account she (Jacks) received back two checks in increments of approximately $20,000 and $120,000. Approximately $6,000 was spent for the repair of the septic system on their children's property at Lake Eufaula. No documentary or other evidence of this expenditure was presented at trial.

11. In September 2020 Rita Jacks' took a one week trip to Utah, helping to take her grand-daughter to college. On this trip, using the judgment proceeds, Jacks purchased jewelry and clothes, but provided no documentary evidence of these expenditures.

12. Rita Jacks testified that for Christmas 2020 she and her husband purchased with $20,000 in cash, one-hundred (100) $100 Walmart gift cards, which they distributed to the Jesus House, Norman High School, Eufaula High School, Checotah High School and Randall University. No documentation or other corroborating evidence was offered supporting this testimony.

5

13. Rita Jacks testified that upon receiving the funds from the judgment resolving the litigation with the Crillys, she and her husband decided that "after ten years of being harassed and broke we celebrated." Using the judgment proceeds, the day after Christmas of 2020 the Jacks embarked on a seven to eight week trip through the southeast. This trip included: (1) Branson, Missouri, to golf and see stage shows, costing an estimated $5,000; (2) Memphis for five nights, including riverboat cruises and gambling; (3) Atlanta, Georgia for three nights; (4) Daytona Beach, Florida for several nights; (5) Miami Beach, Florida for five nights at the Ritz-Carlton Hotel; (6) Pensacola, Florida for three weeks (playing golf and waiting to get Covid vaccine shots); and (7) New Orleans, Louisiana for five days. On this trip the Jacks were "living off the proceeds of the lawsuit."

14. After being back at home in Oklahoma for three to four weeks, in March 2021 the Jacks went on another road trip, this time to: (1) Tomball, Texas to visit Mr. Jacks' daughter and grandchildren for 3 days; (2) Corpus Christi, Texas for two weeks of golfing and spending time with Rita's daughter and grandchildren for spring-break; and (3) San Antonio, Texas for five days playing golf while staying on the Riverwalk.

15. Returning home for April-May, the Jacks worked on their property, spending approximately $2,500 putting in gardens and landscaping.

16. In June 2021, the Jacks began a "bucket list" trip of visiting several states which they hadn't been to before. The trip included: (1) Denver, Colorado for a week or two visiting a family member and playing a lot of golf; (2) Kansas and Nebraska, one night each; (3) Mount Rushmore, South Dakota and surrounding area for two weeks; (4) Minneapolis, Minnesota for three days; (5) Green Bay, Wisconsin and surrounding area for three days; and (6) Mackinac Island, Michigan.

17. Rita Jacks testified that on their travels she kept cash in the automobile glove box and her purse, and while at home hid it "under the mattress." She further testified that on their travels, when convenient, expenses were paid in cash. For those items which she paid for with her credit card, mostly her Discover Card, when she returned home she would deposit cash in her bank account at Bank of Oklahoma with which to pay the credit card company. She testified that some months during 2020-2021 the credit card charges would be $8,000, $9,000, $10,000, $17,000 or more. She testified that her bank statements indicated as much as $86,000 as having been deposited to her account. However, no bank statements, credit card statements or other corroborating evidence supporting Mrs. Jack's testimony were introduced at trial.[7]

18. Mrs. Jacks testified that at the time she and her husband filed bankruptcy there was probably less than $1,000 left of the judgment proceeds.

### III. Discussion

Section 727(a)(5) states that the debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." The purpose underlying § 727(a)(5) is to ensure that prior to being granted a discharge, the debtor provides a full and accurate picture of his financial transactions and activities prior to bankruptcy, thereby preventing the burden of discovering, locating, and recovering assets from being shifted to the trustee and creditors." *Grassmann v. Brown (In re Brown)*, 570 B.R. 98, 118 (Bankr. W.D. Okla. 2017) (citing *Crane v. Morris (In re Morris)*, 302 B.R.

---

[7] See footnote 8 below.

728, 742-43 (Bankr. N.D. Okla. 2003). A *prima facie* case under Section 727(a)(5) exists where a creditor shows that there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy. *Brown*, 570 B.R. at 118 (citing *In re Carlson*, 2008 WL 8677441, at *5 (10th Cir. 2008).

There are two stages of proof under § 727(a)(5). *In re Stewart,* 263 B.R. 608, 618 (10th Cir. BAP 2001); *In re Brown,* 570 B.R. 98, 118 (Bankr. W.D. Okla. 2017); *In re Carlson*, 2008 WL 8677441, at *5 (10th Cir. 2008). First, the party objecting to discharge has the burden of proving a *prima facie* case by showing that there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy. *Carlson,* 2008 WL 8677441, at *5*. Second, once a plaintiff has made this initial showing, § 727(a)(5) requires the debtor to come forward with "a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor." *Carlson,* (quoting *Damon v. Chadwick (In re Chadwick)*, 335 B.R. 694, 703 (W.D. Wis. 2005)). In other words, a debtor's explanation regarding loss of assets should satisfy two concerns: it must be supported by at least some corroboration, and that corroboration must be sufficient to eliminate the need for any speculation as to what happened to the assets." *In re Simmons*, 810 F.3d 852, 859 (1st Cir. 2016) (quoting *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 817 (1st Cir. BAP 2005)); *Brown,* 570 B.R. at 118. The burden shifts to the debtor because the debtor is the one most likely to have access to the operative facts. *In re Croft,* 500 B.R. 823, 860 (Bankr. W.D. Texas 2013).

In this case, there is no question that the Crillys met their burden to show the Jacks' pre-bankruptcy dissipation of substantial assets. In the Final Pre-Trial Order the parties

8

stipulated, and the Court so finds, that within the seventeen (17) month period between July 2020 and January 2021 the Jacks received net proceeds, and spent, $446,897.00 which was paid to them from the judgments they recovered from the Crillys. At trial, the burden of proof therefore shifted to the Jacks to satisfactorily explain those expenditures.

The testimony from the Jacks was that the judgment proceeds was spent paying off a mortgage debt, bank debts, credit card debts and traveling through more than a dozen states to "celebrate" after years of financial struggle and to fulfill Mr. Jacks' "bucket list." The reasons why a debtor spent his money is irrelevant to whether or not to deny a discharge under § 727(a)(5). The purpose of § 727(a) objections to discharge is to protect the integrity of the bankruptcy system of debtor misconduct, not "to police the debtor's legal and ethical or moral obligations more generally." *Berger & Associates v. Kran (In re Kran)*, 760 F.2d 206, 211 (2nd Cir. 2014). "Courts are not concerned with the wisdom of a debtor's disposition of assets, but, instead, focus on the truth, detail, and completeness of the debtor's explanation of the loss." *In re Self,* 325 B.R. 224, 250 (Bankr. N.D. Ill. 2005). A determination as to whether an explanation is satisfactory does not take into account whether what happened to the assets was improper. *Carlson,* 2008 WL 8677441, at *5 (quoting *Shappell's Inc. v. Perry (In re Perry)*, 252 B.R. 541, 550 (Bankr. M.D. Fla. 2000)); *In re McDonald*, 614 B.R. 801, 812 (Bankr. N.D. Ohio 2020); *In re Beatty*, 583 B.R.128, 140 (Bankr. N.D. Ohio 2018) ("a plaintiff need not demonstrate wrongful intent on the part of the debtor in order to prevail on a § 727(a)(5) claim"); *Baker v. Reed (In re Reed),* 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004) (§ 727(a)(5) "simply imposes strict liability" where the plaintiff meets his burden and the debtor does not provide an adequate explanation).

In short, the wisdom of the Jacks spending more than $400,000 in little more than a year is irrelevant to this Court's decision.

Before discussing the overriding legal issue as to whether the Jacks satisfactorily explained the dissipation of their assets as required by § 727(a)(5), it must be said what this Court believes made this trial unique, and more of a challenge than was necessary, was the Jacks' failure to produce a single piece of documentary evidence corroborating the expenditure of funds to support their testimony: no bank statements, no credit card bills, no checks, no hotel and motel receipts - which would not only demonstrate where the money went but also literally provide a roadmap of the Jacks' travels around the country; no documents substantiating the payment of approximate $20,000 for the Walmart Christmas gift cards to schools and to the poor; no documents substantiating the payment of approximately $6,000 for septic tank repair and proof of payment of the $147,000 mortgage and other bank loans. It would appear to the Court that much, if not all, of such documentation would have been readily available. Yet, the Jacks, with the burden of proof clearly upon them to satisfactorily explain how the money was spent, did not list a single exhibit in the Final Pre-Trial Order or their Final List of Exhibits, did not provide the Court a notebook of exhibits as required by Local Rule 9017-1, nor offer a single exhibit into evidence at trial.[8]

---

[8] Immediately following Mrs. Jack's testimony that she did not have any documentation to substantiate the expenditure of the $446,897 but that her counsel did, her counsel approached the bench and requested, that notwithstanding no exhibits were listed in the Final Pre-Trial Order or in the List of Exhibits, that he be permitted to introduce such documentation as "rebuttal" evidence. Counsel for the Crillys objected to the introduction of any exhibits.

Upon the Court's inquiry, Jack's counsel stated that the only documentation he intended to use were the Jacks' bank statements. Such exhibits could not be properly described as

The absence of any documentation corroborating the Jacks' testimony presents the

---

"rebuttal" evidence. "Rebuttal evidence" is evidence whose use could not have been reasonably anticipated as part of a party's case-in-chief. "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." *United States v. Lamoreaux*, 422 F.3d 750, 755 (8th Cir. 2005); *Faigin v. Kelly,* 184 F.3d 67, 85 (1st Cir.1999) ("The principal objective of rebuttal is to permit a litigant to counter new, unforeseen facts brought out in the other side's case.") (citations omitted). "[R]ebuttal evidence may be used to challenge the evidence or theory of an opponent—and not to establish a case-in-chief." *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 759 (8th Cir. 2006); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir.1991) ("Rebuttal must be kept in perspective; it is not to be used as a continuation of the case-in-chief."); *see also* John Henry Wigmore, *Evidence in Trials at Common Law* § 1873 (1976) (a district court should allow rebuttal evidence only if it is necessary to refute the opponent's case). The court is within its discretion in disallowing rebuttal evidence. *Koch v. Koch Industries Inc.,* 203 F.3d 1202, 1224 (10th Cir. 2000); *Fashauer v. New Jersey Transit Rail Operations Inc.,* 57 F.3d 1269, 1287 (3rd Cir.1995) (holding that district court acted within its discretion by precluding rebuttal testimony which reasonably could have been anticipated).

The Court ruled that such exhibits introduced to document the alleged satisfactory explanation of the expenditure of the funds were properly part of the Jacks' case-in-chief upon which they had the burden of proof. The Jacks' bank statements could not be reasonably argued as evidence rebutting the Crilly's case-in-chief that there had been a substantial expenditure of assets. Evidence of *how* the money was spent did not rebut the undisputed fact that it *was* expended.

Having found that the bank statement were not rebuttal evidence that could be used though not listed in the Final Pre-Trial Order, the Court then considered whether the Final Pre-Trial Order could be amended so as to list the bank statements as an exhibit to be used at trial.

The Court noted that Fed. R. Civ. P. Rule 16(e), incorporated by Bankruptcy Rule 7016(e), provides that "[t]he order following a final pretrial conference shall be modified only to prevent *manifest injustice.*" The court further noted that it has discretion to amend a pretrial order, and the relevant factors in the exercise of that discretion include: "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Koch*, 203 F.3d at 1222. Under the circumstances, the Court found that introduction of exhibits by the Jacks at this stage of the proceeding would constitute a surprise to both the Court and the Crillys and would constitute the prohibited "trial by ambush." Noting that this was the Jacks' counsel's first trial, the Court found there was no bad faith on the part of counsel in not having previously disclosed the possible use of any exhibits.

The Court reserved its ruling on the admission into evidence of the bank statements but did allow the limited use of such documentation to the extent it was necessary for Mrs. Jacks to refresh her recollection for her testimony pursuant to Fed. R. Evid. 612; however, Jack's counsel never handed Mrs. Jack's the bank statements for the purpose of refreshing her memory as provided by FRE 612. Just as importantly, the Jacks rested their case without ever having moved for the admission of the bank statements.

11

issue of whether their testimony,[9] uncorroborated by any documents, can meet their burden of proof to satisfactorily explain the dissipation of assets under § 727(a)(5).

Courts have generally determined that what constitutes a satisfactory explanation under § 727(a)(5) is left to the sound discretion of the court. *See Martinez v. Sears (In re Sears)*, 565 B.R. 184, 192 (10th Cir. BAP 2017) (citing *Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 726 (Bankr. D. Colo. 2013) (and cases cited therein)); *In re Amphone,* 613 B.R. 764, 784 (Bankr. D. Kan. 2020) ("The statute's use of the word 'satisfactorily' leaves considerable discretion to the Court.")

"The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984); *In re Wynn,* 261 B.R. 286, 304 (Bankr. M.D. Ala. 2001). "A satisfactory explanation is one that convinces the court." *Id.* "Vague and indefinite explanations of losses such as 'monies were spent' or 'lost through gambling' without documents is unacceptable." *In re Goblick,* 93 B.R. 771, 775 (Bankr. M.D. Fla.1988); *In re Huynh*, 392 B.R. 802, 813 (Bankr. D. N.D. 2008) ("For a debtor's explanation to be satisfactory, it must 'convince the judge that the debtor has not hidden or improperly shielded assets.... General assertions that money was spent on living expenses or lost on gambling, without documentation, are unacceptable.'"). "The debtor will be required to produce some kind of direct, specific evidence in order to defeat an objection [of discharge] based upon failure to explain a loss of assets." *In re*

---

[9] While both Mr. and Mrs. Jacks testified, Mr. Jacks' testimony was of little help to the Court. He testified that he knew little of, and paid little attention to, the family's finances, relying almost entirely upon his wife in such matters. He testified that he did considerable gambling and playing golf with the proceeds of the judgment, but he did not even estimate the amount of money he had spent on those endeavors.

*Ridley*, 115 B.R. 731, 737 (Bankr. D. Mass. 1990) (citing *McBee v. Sliman*, 512 F.2d 504, 506 (5th Cir. 1975)).

The United States Court of Appeals for the Tenth Circuit has not set forth the standard for determining what constitutes a satisfactory explanation of loss of assets under § 727(a)(5). Multiple circuits and cases within this circuit have set forth two criteria in determining whether an explanation is satisfactory: first, it must be supported by some corroboration; and second, the corroboration must be sufficient to eliminate any speculation as to what happened to the assets. *See First Texas Sav. Association v. Reed (In re Reed)*, 700 F.2d 986, 992-93 (5th Cir. 1983); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 619 (11th Cir. 1984); *Aoki v. Atto Corp. (In re Aoki)*, 323 B.R. 803, 817 (1st Cir. BAP 2005).[10] Those circuits employ the oft cited test, and the one recently employed by this Court in *In re Stewart*,[11] that a successful defense of a § 727(a)(5) claim requires the debtor to come forward with "a satisfactory explanation which must consist of more than vague, indefinite and uncorroborated assertions by the debtor." *See also In re Phouminh*, 339 B.R. 231, 248 (Bankr. D. Colo. 2005) (finding that an explanation "in general terms that is merely suggestive of reasons that assets became depleted falls short of the mark.").

The Crillys argue that the Jacks' failure to produce *any documentary* evidence of the expenditure of the funds is sufficient to bar their discharge. While documentation would indisputably be extremely important, and likely outcome determinative in this as in most cases, this Court would not make documentation a litmus test in *every* § 727(a)(5)

---

[10] The Fifth, Eleventh and First Circuits.

[11] 2022 WL 3209467, at *23 (Bankr. W.D. Okla. 2022).

case. These cases are fact intensive and subject to the broad discretion of the court. The Court does not view the terms "corroboration" and "documentation" as necessarily synonymous.

Section 727(a)(3) requires that debtors retain sufficient records, given their educational and business experience levels, to meet the statutory requirement under that section. "It does not follow, however, that such a lack of records requires that (debtors') oral explanation for the disposition of assets must be rejected." *In re Spitko*, 357 B.R. 272, 323 (Bankr. E.D. Pa. 2006). As stated in *In re Young*, 346 B.R. 597, 916 (Bankr. E.D. N.Y. 2006):

> In this Court's view, the preferable rule would not mandate denial of discharge for failure to produce corroborating papers where the debtor's testimonial explanation bears sufficient credibility. An interpretation of 11 U.S.C. § 727(a)(5) mandating documentary corroboration in all instances at a peril of losing a discharge would impermissibly strip purpose and meaning from 11 U.S.C. § 727(a)(3), an independent and separate basis for denying discharge.

(citing *In re Bodenstein*, 168 B.R. 23, 34 (Bankr. E.D. N.Y. 1994)); *see also In re Hamilton*, 306 B.R. 575, 586 (Bankr. W.D. Ky. 2004); *In re Splawn*, 376 B.R. 747, 762 (Bankr. D. N.M. 2007).

As stated in *In re Inzero*, 426 B.R. 428, 432 (Bankr. D. Conn. 2009):

> In order to obtain a denial of discharge under § 727(a)(5), first, the creditor must establish a loss or deficiency of assets. If the creditor makes such a showing, the debtor has an opportunity to explain the whereabouts of the assets. As long as the debtor's explanation is convincing and not rebutted, there is *no need for documentary corroboration*. *See Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 97 (Bankr. E.D. N.Y. 1997) (stating that "as long as debtor's explanation convinces the judge that the debtor has not hidden or shielded assets, corroborating evidence by way of documentation is not necessary in every instance").

14

(quoting *D.A.N. Joint Venture v. Cacioli (In re Cacioli),* 463 F.3d 229, 238-39 (2nd Cir. 2006).

Documentation to corroborate expenditures may become particularly difficult in situations where cash is used, for example, for living expenses (or gambling). Thus, in the Court's opinion, the Jacks should not be required to account by testimony and/or documentation for every penny expended. But in this case, we are not dealing with insignificant every day expenses but hundreds of thousands of dollars. *See e.g. Matter of D'Agnese,* 86 F.3d 732, 734 (7th Cir. 1996) (discharge denied under § 727(a)(5) where debtor claimed, without supporting documentation, to have sold over $300,000 in assets pre-petition); *Solomon v. Barman (In re Barman)*, 244 B.R. 896, 901 (Bankr. E.D. Mich. 2000) (discharge denied under § 727(a)(5) where debtor claimed, without supporting documentation, to have sustained $131,000 in gambling losses).

The problem in this case is that even accepting as true Mrs. Jack's testimony about the specific (although undocumented) expenditure of $147,000 to pay off the mortgage, $20,000 to purchase Christmas gift cards, $6,000, to pay for septic tank repair, $70,000 for attorney's fees related to the Crilly's bankruptcy[12] and $2,500 for garden and landscaping expense, there remains more than $200,000 unaccounted for, with nothing more than vague, indefinite and uncorroborated testimony that hotel bills on their three to four-month road trip might have averaged $350 a night. There was no other testimony and no documentation produced as to other expenses on their trips, including gas, food and

---

[12] The only "document" relating to the attorneys fees incurred by the Jacks was a text message dated December 15, 2021, to the Jacks from their attorney stating that his fees for August through December 1, 2021, were $13,672.30 and that he was filing a motion in the bankruptcy court seeking a sanction of $55,000 in fees from the Crillys. This text message was offered as an exhibit by *Crillys' counsel*. [Trial Ex. 6].

15

golfing activities. Accepting Mrs. Jacks testimony as true, it appears that in the approximately two years leading up to their bankruptcy the Jacks spent an unaccounted for $10,000 a month even without taking into consideration their monthly income, as reflected by their schedules, of approximately $4,000.

As it must do, here the court has construed the objection to discharge strictly against the creditor and liberally in favor of the debtor to promote the Bankruptcy Code's "fresh start" policy, including discounting any questions surrounding Ms. Jacks credibility. Nevertheless, the Court still comes to the conclusion that the explanation the Jacks have provided concerning the disposition of estate assets is simply insufficient. While Mrs. Jacks appeared intelligent and credible, the focus of the court's inquiry is not exclusively on the subjective nature or honesty of the debtor's explanation but is also on the objective adequacy of such explanation. *See D'Angese,* 86 F.3d at 735. The Court finds Mrs. Jacks' testimony with regard to a large portion of the expenditures to be simply too vague, incomplete, lacking in details, unsupported by any documentation and certainly far short of a satisfactory explanation that meets their burden of proof. Accordingly,

**IT IS ORDERED** that the Plaintiffs', Samuel Crilly and Kimberly Crilly, claim under Bankruptcy Code § 727(a)(5) is **Granted**, and the Debtors, Joel Arnold Jacks and Rita Gayle Jacks, are denied a discharge.

**IT IS FURTHER ORDERED** that the Plaintiff's claim under Bankruptcy Code § 727 (a)(4) is **Dismissed.**

Pursuant to Bankruptcy Rule 7052 a separate judgment will be entered.

**# # #**